**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THYRONE STEWART,<br><br>               Plaintiff,<br><br>     v.<br><br>BORDERS, et al,<br><br>               Defendant. | NO. EDCV 19-1369-MWF (KS)<br><br>MEMORANDUM AND ORDER<br>DISMISSING COMPLAINT<br>WITH LEAVE TO AMEND |

## I.    INTRODUCTION

On July 25, 2019, Plaintiff, a California state prisoner who is proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint ("Complaint") and a request to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 1, 2.)  In civil rights actions brought by prisoners, Congress requires district courts to dismiss the complaint if the court determines that the complaint, or any portion thereof:  (1) is frivolous or malicious; (2) fails to state a claim upon which relief

1

can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.[1] *See* 28 U.S.C.A. § 1915A.

In determining whether a complaint should be dismissed at screening, the Court applies the standard of Federal Rule of Civil Procedure 12(b)(6): "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). Thus, the plaintiff's factual allegations must be sufficient for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and internal quotation marks omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

When a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations and internal quotation marks omitted)). In giving liberal interpretation to a *pro se* complaint, however, the court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), and the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of

---

[1] Even when a plaintiff is neither a prisoner nor proceeding *in forma pauperis*, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a trial court to dismiss a claim *sua sponte* and without notice "where the claimant cannot possibly win relief." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (same); *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per curiam*) (adopting Ninth Circuit's position in *Omar* and noting that in such circumstances a *sua sponte* dismissal "is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources").

fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the court finds that a *pro se* complaint fails to state a claim, the court must give the *pro se* litigant leave to amend the complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (internal quotation marks omitted); *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005). However, if amendment of the pleading would be futile, leave to amend may be denied. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of a motion for leave to amend,' *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), [a]nd the district court's discretion in denying amendment is 'particularly broad' when it has previously given leave to amend.").

For the following reasons, the Court finds that the Complaint fails to state a cognizable claim for relief and must be dismissed.[2] However, leave to amend is granted.

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff sues the following California Institute for Men ("CIM") employees: Muratet, a correctional counselor, in his individual capacity; Bluford, a correctional counselor and Defendant Muratet's supervisor, in his individual capacity; and Warden Borders, in his individual and official capacity. (Complaint at 3.) Plaintiff alleges that Defendant Muratet refused to refer Plaintiff for a parole hearing pursuant to Proposition 57, and Defendant Bluford failed to provide Plaintiff with a "due process hearing" before Plaintiff was "depriv[ed] of [his] liberty." (Complaint at 4.) Plaintiff asserts that his primary prison term was a one-year term for inflicting corporal injury on a spouse (California Penal Code § 273.5),

---

[2]     Magistrate judges may dismiss a complaint with leave to amend without approval of the district judge. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

3

and he has now served 19 years in state prison. (*See* Complaint at 5.) Plaintiff alleges that Defendant Borders "has allowed unlawful limitations on [Plaintiff's] right to be provided with a referral to the [Parole] Board, violating [his] constitutional rights to be released due to [him] not having a violent crime as [his] primary offense." (Complaint at 4.) Specifically, Plaintiff alleges violations of his rights under the Due Process Clause and Equal Protection Clause of the U.S. Constitution. (Complaint at 4.) Based on these allegations, Plaintiff seeks the following relief: (1) to be released as soon as possible; and (2) the punitive and compensatory damages. (Complaint at 5.)

## III.   DISCUSSION

### A. Background

Shortly after Plaintiff was paroled from prison on April 22, 2000, he was arrested and charged with, *inter alia*, assault by means of force likely to cause great bodily injury (California Penal Code ("Penal Code") § 245(a)(1)) and two counts of inflicting corporal punishment on a spouse (Penal Code § 273.5(a)). *People v. Stewart*, No. E058988, 2014 Cal. App. Unpub. LEXIS 5293, at *1-3 (July 29, 2014).[3] The amended information also alleged that Plaintiff had two prior strike convictions (Penal Code §§ 667(c), (e), 1170.12(c)), had two prior serious felony convictions (Penal Code § 667(a)(1)), and had served a prior prison term (Penal Code § 667.5(b)). *Id.* A jury found Plaintiff guilty of: assault by means of force likely to cause great bodily injury; misdemeanor battery; and both counts of inflicting corporal punishment on a spouse. *Id.* The trial court sentenced Plaintiff to state prison pursuant to the "Three Strikes" law for a total aggregate term of 51 years to life, as follows: two consecutive

---

[3]     A court may take judicial notice of court records. *See, e.g., Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue' ").

indeterminate terms of 25 years to life; and one consecutive one-year prior prison term enhancement. *Id.*

**B. Proposition 57**

In 2016, California voters approved Proposition 57 which, in pertinent part, requires that "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." Cal. Const. Art. I, § 32(a)(1). The implementing regulations define a "violent felony" as "a crime or enhancement as defined in subdivision (c) of section 667.5 of the Penal Code." CAL. CODE REGS. tit. 15, § 3490 (2019). Neither assault by means of force likely to cause great bodily injury nor inflicting corporal punishment on a spouse constitute a "violent felony" under this definition. *See id.*; *see also* Penal Code § 667.5.

Under Proposition 57, the "full term for the primary offense" is defined as "the longest term of imprisonment imposed by the court for any offense, *excluding* the imposition of an enhancement, consecutive sentence, or alternative sentence." *Id.*, § 32(a)(1)(A) (emphasis added). An indeterminate life sentence under the Three Strikes law is considered an "alternative sentence," *see In re Edwards*, 26 Cal. App. 5th 1181, 1187, 237 Cal.Rptr.3d 673 (Cal. App. Sept. 7, 2018), and, therefore, is not a primary offense term that must be served before a prisoner is eligible for parole consideration under Proposition 57.

Further, following the California Court of Appeal decision in *In re Edwards*, 26 Cal. App. 5th 1181, 237 Cal.Rptr.3d 673 (Sept. 7, 2018) (finding that inmates serving Three Strike sentences for nonviolent offenses are constitutionally entitled to parole consideration under Proposition 57), the California Department of Corrections and Rehabilitation ("CDCR") enacted emergency regulations to accord parole consideration to nonviolent offenders indeterminately sentenced pursuant to the Three Strikes Law. *See Proposed Regulations*, Cal.

Code Regs. tit. 15, §§ 3495-97. These regulations were given temporary emergency effect on January 1, 2019, pending final adoption.

The CDCR also promulgated regulations establishing a screening process for inmates who would be referred for parole consideration under Proposition 57.[4] *See* CAL. CODE REGS. tit. 15, § 3492 (2019); *see also In re McGhee*, 34 Cal. App. 5th 902, 907 (2019). However, in April 2019, the California Court of Appeal, applying principles of administrative law, held that the CDCR regulation establishing the screening process was invalid and ordered that the plaintiff in that case, an inmate whom prison officials had refused to refer to the Parole Board for parole consideration under Proposition 57, be referred within 60 days. *In re McGhee*, 34 Cal. App. 5th at 839, 905, 914. In July 2019, the CDCR released an "Implementation Plan for the *McGhee* Decision." CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, PROPOSITION 57 PAROLE CONSIDERATION FOR NONVIOLENT OFFENDERS IMPLEMENTATION PLAN FOR THE MCGHEE DECISION, *available at* http://www.cdcr.ca.gov/proposition57 (last visited Aug. 7, 2019). According to the CDCR's Implementation Plan, effective July 9, 2019, the CDCR will no longer apply behavior based public screening criteria to eligible nonviolent offenders and all indeterminately-sentenced nonviolent offenders who are eligible for parole consideration under Proposition 57 will be referred to the Parole Board for a parole hearing 180 days prior to their Nonviolent Parole Eligible Date, unless they have previously been scheduled for a parole hearing or will be eligible for a parole hearing within the next 12 months

---

[4]    Under these regulations, an inmate is eligible for referral to the Parole Board only if all of the following are true: (1) The inmate is not currently serving a Security Housing Unit term; (2) The Institutional Classification Committee has not assessed the inmate a Security Housing Unit term within the past five years, unless the department assessed the Security Housing Unit term solely for the inmate's safety; (3) The inmate has not served a Security Housing Unit term in the past five years, unless the department assessed the Security Housing Unit term solely for the inmate's safety; (4) The inmate has not been found guilty of a serious rule violation for a Division A-1 or Division A-2 offense as specified in subsection 3323(b) or 3323(c) within the past five years; (5) The inmate has not been assigned to Work Group C as specified in subsection 3044(b)(4) in the past year; (6) The inmate has not been found guilty of two or more serious Rules Violation Reports in the past year; (7) The inmate has not been found guilty of a drug-related offense as specified in section 3016 or refused to provide a urine sample as specified in subsection 3290(d) in the past year; (8) The inmate has not been found guilty of any Rules Violation Reports in which a Security Threat Group nexus was found in the past year; and (9) The inmate's nonviolent parole eligible date falls at least 180 calendar days prior to his or her earliest possible release date and the inmate will not reach his or her earliest possible release date for at least 210 calendar days. CAL. CODE REGS. tit. 15, § 3492(c) (2019).

under any other provision of law.  *Id.*  Notably, Plaintiff signed the Complaint seven days before the CDCR's Implementation Plan went into effect.

**C. Analysis**

    **1.**    **Complaint Does Not State A Claim Against Defendants Bluford and Borders**

    "Liability . . . must be based on the personal involvement of the defendant."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[T]here must be a showing of personal participation in the alleged rights deprivation.").  To demonstrate a civil rights violation against a government official, a plaintiff must show either direct, personal participation of the official in the harm or some sufficient causal connection between the official's conduct and the alleged constitutional violation.  *See Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011).  The inquiry into causation must be individualized and must focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

    Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Rather, to be held liable, a supervising officer has to personally take some action against the plaintiff or "set in motion a series of acts by others . . . which he knew or reasonably should have known, would cause others to inflict the constitutional injury" on the plaintiff.  *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted).  "Supervisory liability [may be] imposed against a supervisory official in his individual capacity [only] for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the

complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Preschooler II v. Clark Cty. Bd. of Tr.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

Here, Plaintiff's sole allegations against Defendant Bluford are that he is the supervisor of Defendant Muratet and he did not provide Plaintiff "with a due process hearing before [Plaintiff] was subjected to the injury of being deprived of [his] liberty." (Complaint at 3, 4.) These vague and conclusory allegations do not support a plausible inference that Defendant Bluford caused Plaintiff's alleged constitutional injury – or even knew that Plaintiff had been denied a referral to the Parole Board. The Court cannot assume that Defendant Bluford personally participated in the alleged constitutional deprivations merely because of his supervisory role or because of the fact that Plaintiff was not referred for parole consideration.

Similarly, Plaintiff's sole allegations against Defendant Borders are that he "allowed unlawful limitations on [Plaintiff's] right to be provided with a referral to the [Parole] Board, violating [his] constitutional rights to be released due to [him] not having a violent crime as [his] primary offense." (Complaint at 4.) Again, these allegations do not support a plausible inference that Defendant Borders caused Plaintiff's alleged constitutional injury – or even knew that Plaintiff had been denied a referral to the Parole Board. The Court cannot assume that Warden Borders personally participated in the alleged constitutional deprivations merely because of his supervisory role or because of the fact that Plaintiff was not referred for parole consideration.

Accordingly, Plaintiff's claims against Defendants Bluford and Borders are dismissed. If Plaintiff elects to file a First Amended Complaint, he shall either omit his claims against Defendants Bluford and Borders or include specific factual allegations that support a plausible inference that both defendants personally participated in, or are otherwise liable for, the constitutional violations alleged.

8

## 2. Complaint Fails To State a Constitutional Claim

In similar cases in which prisoners have filed Section 1983 complaints challenging the constitutionality of CDCR's application of Proposition 57 to their cases, federal courts have found that the prisoner-plaintiffs failed to allege a cognizable claim under Section 1983 because the crux of their complaints concerned an alleged violation of state law. *See, e.g., Russell v. Diaz*, No. 218CV1062TLNACP, 2019 WL 2613592, at *3 (E.D. Cal. June 26, 2019); *McCrary v. Kernan*, No. 2:17–cv–1944 KJN P, 2017 WL 4539992 (E.D. Cal. Oct. 11, 2017); *Herrera v. California State Superior Courts*, No. 1:17–cv–386–AWI–BAM, 2018 WL 400320 (E.D. Cal. Jan. 12, 2018); *Daniels v. California Department of Corrections and Rehabilitation*, No. 1:17–cv–01510– AWI–BAM, 2018 WL 489155 (E.D. Cal. Jan. 19, 2018)); *see also Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law."). The Complaint fails for the same reason. Although it mentions Due Process, Equal Protection, and the Bill of Rights, the crux of the Complaint is that Defendants' actions violated the plain language of California law (*see* Complaint at 4-5), not that they deprived Plaintiff of due process or otherwise infringed his federal constitutional rights. *Cf. Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.1996) (stating that a habeas petitioner cannot "transform a state-law issue into a federal one merely by asserting a [constitutional] violation"). Nevertheless, it is possible that Plaintiff could correct these defects with amendment by explaining *how* Defendants' actions – or inaction – satisfied the elements of a Due Process and/or Equal Protection violation.

To state a procedural due process claim, Plaintiff must present sufficient factual allegations for the Court to plausibly infer the following: (1) he had a specific liberty or property interest protected by the Constitution; (2) he was deprived of that interest by a government actor; and (3) he received a "lack of process" in connection with that deprivation. *See Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The Complaint

contains conclusory assertions that Defendants "created liberty interests that are protected by the Due Process Clause," Plaintiff has a liberty interest in "freedom from restraint," and Defendants "depriv[ed] [Plaintiff] of his liberty, a violation of Due Process." (Complaint at 4.) However, the Complaint does not identify a *specific* liberty interest at issue (*see generally* Complaint at 4), and the Constitution does not guarantee prisoners a liberty interest in either parole or freedom from restraint. *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979); *see also Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).[5] Accordingly, Plaintiff's vague and conclusory assertions that Defendants deprived him of a liberty interest without due process do not state a claim under the Due Process Clause and the claim must be DISMISSED. *See Sprewell*, 266 F.3d at 988.

To state a claim under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff, who is a "class of one," must present sufficient factual allegations for the Court to plausibly infer that Defendants treated Plaintiff differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1018 (S.D. Cal. 2006), aff'd in part, 393 F. App'x 513 (9th Cir. 2010). Notably, Plaintiff has presented <u>no</u> factual allegations indicating that Defendants treated similarly situated inmates differently from Plaintiff, much less factual allegations to support a plausible inference the difference in treatment had no rational basis. Accordingly, the Complaint also fails to state a claim under the Equal Protection Clause, and this claim too must be DISMISSED.

---

[5] States may under certain circumstances create liberty interests which are protected by the Due Process Clause. In the context of prisoners, these liberty interests are limited to freedom from restraint that "imposes imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (holding that disciplining a prisoner by housing him in segregated confinement did not implicate a constitutionally protected liberty interest). With respect to parole specifically, whether a state's parole laws create a liberty interest depends on whether the laws use "mandatory language ('shall')" so as to confer a "presumption" or "expectancy" – a "claim of entitlement." *See Board of Pardons v. Allen*, 482 U.S. 369, 377-78; *Greenholtz*, 442 U.S. at 7; *Miller v. Oregon Bd. Of Parole*, 642 F.3d 711, 714 (9th Cir. 2011).

## IV.    CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend.   If Plaintiff still wishes to pursue this action, he is granted **twenty-one (21) days** from the date of this Memorandum and Order within which to file a First Amended Complaint.   In any amended complaint, Plaintiff shall cure the defects described above.

**Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint.**   Further, the First Amended Complaint, if any, shall be complete in itself and shall bear both the designation "First Amended Complaint" and the case number assigned to this action.   **It shall not refer to, or rely on, the Complaint or any other prior pleadings**, and claims and defendants that are not expressly included in the First Amended Complaint shall be deemed abandoned.

In any amended complaint, Plaintiff shall either omit his claims against Defendants Bluford and Borders or include sufficient factual allegations to support a plausible inference that they personally participated in, or otherwise caused, the alleged constitutional deprivations.   In any amended complaint, Plaintiff shall also omit his Equal Protection claim or include specific factual allegations to support a plausible inference that Defendants treated similarly situated inmates differently from Plaintiff and had no rational basis for doing so. Plaintiff shall also clearly and succinctly describe the basis for his Due Process claim. **Plaintiff may not rely on conclusory allegations and formulaic recitations of applicable law.**

Plaintiff shall make clear the nature and grounds for each claim, specifically identify the defendants he maintains are liable for that claim, clearly and concisely explain the factual and legal basis for their liability, and identify which individual defendants are being sued in their individual capacity and which are being sued in their official capacity.   Plaintiff is strongly

encouraged to utilize the Central District's standard civil rights complaint form when filing any amended complaint.

**Plaintiff's failure to timely comply with this Order may result in a recommendation of dismissal. If Plaintiff no longer wishes to pursue this action, in whole or in part, hey may voluntarily dismiss it, or any portion of it, by filing a signed document entitled "Notice of Dismissal" in accordance with Federal Rule of Civil Procedure 41(a)(1).**

DATE: August 9, 2019

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.